# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT SOLOMON                            )
                                          )
                    Plaintiff,            )
            v.                            ) Civil Action No. 06-2214 (RCL)
                                          )
OFFICE OF THE ARCHITECT OF                )
THE CAPITOL, et. al.                      )
                                          )
                    Defendants.           )
_____       )

## MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants, Office of the Architect of the Capitol, et. al., through counsel, respectfully move this Court to dismiss the complaint because Plaintiff failed to state a claim under which relief can be granted.  In support of this motion, Defendants respectfully refer the Court to the attached memorandum of points and authorities.

Because this is a dispositive motion, the undersigned has not sought Plaintiff's consent before filing it.  LCvR 7 (m).

June 5, 2007                          Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____/s/_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-7153

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT SOLOMON | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 06-2214 (RCL) |
| | ) |
| OFFICE OF THE ARCHITECT OF | ) |
| THE CAPITOL, et. al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants, Office of the Architect of the Capital ("AOC"), and the six individual

defendants,[1] through counsel, respectfully move this Court to dismiss Plaintiff's complaint for

failure to state a claim under which relief can be granted.

## INTRODUCTION

Plaintiff is a former employee of the Office of the Architect of the Capital.  Plaintiff was

terminated in December 2003 for, among other reasons, "exhibiting hostile and threatening

behavior in the workplace."  Compl. ¶ 38.  Plaintiff requested and received an administrative

hearing prior to his termination.  Compl. ¶¶ 41, 45. [2]  In the instant action, Plaintiff alleges that

his due process rights were violated under "the Architect of the Capitol's Personnel Manual

Chapter 752 - Discipline, 'Chapter 752' and the Firth Amendment to the Constitution of the

United States as determined by the District Court in <u>Vanover v. Hantman</u>, et. al., 77 F. Supp.2d

---

[1] Six AOC employees are defendants in their personal capacities.  They are: Alan
Hantman; Richard McSeveney; Rebecca Tiscione; Gerand Walker; Edgard Martinez; Michael
Marinaccio; and Robert Savidge.  Alan Hantman is also a defendant in his official capacity as
Architect of the Capitol.

[2] His administrative complaint addresses the same alleged actions as in the instant
complaint.  See No. 04-AC-13 (RP).

91 (D.D.C. 1999)." Compl. ¶ 1.  Plaintiff brings suit against six AOC employees in their

personal capacities that were involved with the administrative process regarding his termination.

## PROCEDURES, PROTECTIONS PROVIDED

Chapter 752 of the Architect of the Capitol's Personnel Manual ("Chapter 752") provides

that for serious problems, such as threats and violence, a termination can be appropriate.  Exhibit

A, Chapter 752, page 752-3.  The first step under Chapter 752 is for an employee to receive a

notice from a first line, or higher level, supervisor of a proposed action, such as the termination

in this case.  <u>See</u> Chapter 752, Appendix B.1.1 and .1.4.  Plaintiff does not dispute that he was

provided this notice and that he was given the opportunity to respond to the matters alleged in

the notice.  <u>See</u> Complaint ¶¶ 37-39.  The second step is for a higher level supervisor to review

the proposal, the response, and other information in the record at that point.  <u>See</u> Chapter 752,

Appendix B.1.6.  The third step is for this higher level supervisor to concur or disagree and

modify the proposed action.  <u>See</u> Chapter 752, Appendix B.1.6.  The fourth step provides for an

employee to request a hearing, and even provide a response, before a third party hearing officer

who will hear testimony and other evidence and issue a recommendation.  <u>See</u> Chapter 752,

Appendix B.1.7.  Plaintiff requested and was provided this hearing and was even assisted by

counsel of plaintiff's choosing.  <u>See</u> Compl. ¶ 45.  Plaintiff was given the opportunity to present

testimony, documents, and other witnesses.  The hearing officer's report and recommendation

and other evidence from the hearing was then forwarded to the Architect of the Capitol or his

designee to make the final decision.  <u>See</u> Chapter 752, Appendix B.1.8 and .1.9.  This was done

and the final decision was that Plaintiff be terminated.  <u>See</u> Complaint ¶ 48.  Plaintiff does not

allege that these procedures were not followed.

## ARGUMENT

### I.    Plaintiff does not state a due process claim

Congress has not expressly provided a cause of action for the alleged constitutional due process violation.  Plaintiff incorrectly argues that he is entitled to bring a due process violations suit against several AOC employees and recover damages under  Vanover v. Hantman, et. al., 77 F. Supp.2d 91 (D.D.C. 1999)." Compl. ¶ 1.  Both this Court and the Supreme Court, however, have consistently refused to extend Bivens remedies into new areas where Congress has already established a statutory mechanism for addressing the relevant problem. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 68 (2001); Spagnola v. Mathis, 859 F.2d 223 (D.C. Cir. 1988) (en banc).

### A.    Special Factors Analysis

The courts have recognized that special factors counseling against the creation of an alternative Bivens-type remedy must be recognized where a comprehensive statutory scheme has been established to provide relief in a given area.  See Mittleman v. U.S. Treasury, 773 F. Supp. 452, 454 (D.D.C. 1991) (Privacy Act bars plaintiff's constitutional claims); Weiss v. International Brotherhood of Electrical Workers, 729 F. Supp. 144, 147 (D.D.C. 1990) (to the extent that plaintiff's emotional injuries were the result of the stressful work situation created by the defendant, her claim of intentional infliction of emotional distress must be dismissed as subsumed within Title VII) (and cases cited therein); Spangnola, 859 F.2d 223 (D.C. Cir. 1988) (en banc) (recognizing the exclusivity of the Civil Service Reform Act's remedies); accord Bush v. Lucas, 462 U.S. 367 (1983) (comprehensive procedural and substantive provisions of the Civil Service Reform Act constitute "special factors" counseling hesitation against a Bivens remedy); Chung v. United States Dep't of Justice, 333 F.3d 273, 274 (D.C. Cir. 2003) (Privacy Act);

3

Schweiker v. Chilicky, 487 U.S. 412 (1988) (declining to infer a damages action against individual Government employees alleged to have violated due process in their handling of Social Security applications); Brown v. GSA, 425 U.S. 820 (1976) (Title VII is the sole remedy for federal employees complaining of job discrimination on account of sex or race); Gleason v. Malcomb, 718 F.2d 1044, 1048 (11th Cir. 1983) (special factors counsel against a Bivens remedy where plaintiff could have sought equitable relief pursuant to the Administrative Procedure Act ("APA")); Dearsman v. Kurtz, 516 F. Supp. 1255, 1259-60 (D.D.C. 1981) (Civil Service Reform Act ("CSRA") and Title VII constituted exclusive remedies for adverse actions and discrimination in the federal workplace, precluding plaintiff's due process claims); Dotson v. Griesa  398 F.3d 156, 173 (2nd Cir. 2005) (Congressional Accountability Act constituted special factor precluding Bivens remedy against employees of the judicial branch, given that Congress initially considered extending the statute's coverage but decided against such action); Payne v. Meeks, 200 F. Supp.2d 200, 205 (E.D.N.Y. 2002) (the comprehensive statutory scheme established by Congress to govern the rights of congressional employees clearly precludes Payne's Bivens claim for unconstitutional discharge).

        In this action, Plaintiff has, himself, admitted that he was afforded notice and one or more administrative hearings.  See Complaint ¶¶ 37, 38, 41, 45.  Although Plaintiff complains that such a hearing was procedurally flawed, see id. ¶ 44, he cannot escape the fact that Congress has seen fit to afford a limited statutory mechanism, which precludes the creation of a Bivens remedy.

        It is not necessary that the statutory remedial scheme be capable of affording the plaintiff all of the relief he seeks in this action.  The controlling factor is that Congress has created a comprehensive scheme.  Spagnola v. Mathis, 859 F.2d at 228-30; see Bush v. Lucas, 462 U.S. at

4

388-90.  Thus, special factors counsel against the creation of a <u>Bivens</u> remedy here.  <u>Bush</u>, 462

U.S. 367; <u>Payne v. Meeks</u>, 200 F. Supp.2d at 205.  Accordingly, Plaintiff's claims against the

individual defendants should be dismissed.

**B.    <u>Vanover v. Hantmann</u> does not create a due process claim**

Plaintiff incorrectly cites the decision in <u>Vanover v. Hantmann</u>, 77 F. Supp.2d 91 (D.D.C.

1999) *aff'd* 38 Fed. Appx 4 (D.C. Cir. 2002) for the proposition that he has a due process claim.

Like the Plaintiff in the instant complaint, the plaintiff in <u>Vanover</u> claimed that the Architect of

the Capitol deprived him of property without due process of law in violation of the Fifth

Amendment.  The Court decided that because the claim must be dismissed on the merits, "there

[was] no need to address whether plaintiff's claim is precluded by a comprehensive system of

remedies."  77 F. Supp.2d at 101.  Moreover, the Court stated that "[w]ith regard to the

preclusive effect of a comprehensive system of remedies . . . . [i]t is established, however, that

under this theory, a constitutional claim is precluded insofar as it seeks damages."  <u>Vanover</u>, 77

F. Supp.2d at 101,  fn. 6.

**II.    Plaintiff's due process claim would fail on the merits**

Assuming *arguendo*, that Plaintiff could assert a due process claim, such a claim would

fail on the merits.  Plaintiff was provided the procedures and protections found in Defendant's

policies regarding discipline, but he claims they were insufficient and deprived him of "notice"

and "opportunity to be heard."  <u>See</u> Complaint, ¶¶ 41, 44- 46; AOC Discipline Policy, Chapter

752 (Exhibit A).

5

### A.     Due Process

"In order to establish a deprivation of property without due process, plaintiff must demonstrate:  (1) that he was deprived of a protected property interest[3] and (2) that defendants deprived him of that interest without providing the process that was due."  Vanover, 77 F. Supp.2d at 101 (D.D.C. 1999); see Orange v. District of Columbia, 59 F.3d 1267, 1273 (D.C. Cir. 1995).  Constitutionally adequate due process must include notice and "some form of hearing," as the government "may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement."  Logan v. Zimmerman Brush Co., 455 U.S. 422, 434 (1982).   "With regard to a termination of a protected interest in employment, due process requires a notice and a pretermination hearing allowing the employee to challenge the grounds of the termination."  Vanover, 77 F. Supp.2d at 104; see Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-43 (1985).  More specifically, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."  Id. at 546.

### I.     Notice and hearing were constitutionally sufficient

Plaintiff received notice regarding the grounds of his proposed termination in the proposed termination letter dated August 6, 2003.  Compl. ¶¶ 37-38.  The proposed letter

---

[3] Although plaintiff suggests that he enjoyed a property interest in his employment, there is a diversity of views among this Court's Judges as to whether any such property interest exists in employment within the Office of the Architect of the Capitol.  Compare Commerce v. Hantman, Civil Action No. 97-0242 (TFH), 1999 WL 1611325 at *5 (D.D.C. Oct. 29, 1999) (Employees within the Office of the Architect of the Capitol are designated by statute to be part of the Excepted Service and are therefore subject to dismissal without cause, prior notice, a termination hearing or an opportunity to appeal), aff'd No. 00-5308, 2001 WL 1610062  (D.C. Cir. Nov. 21, 2001); with Vanover v. Hantman, 77 F. Supp. 2d. at 104-108 (expressing the contrary view, but recognizing that even if the Architect of the Capitol did not follow all of its promulgated procedures, such does not necessarily mean that there has been a constitutional violation of due process.).

provided sufficient notice because it made clear why Plaintiff's termination was being proposed.

As Plaintiff concedes, the letter stated that his termination was proposed for "exhibiting hostile

and threatening behavior in the workplace."  See Vanover, 77 F. Supp.2d at 104 (finding

termination proposal was constitutionally adequate notice where plaintiff was apprised of the

charges and evidence against him).  Moreover, Plaintiff received a hearing in which he had an

opportunity to present his side of the story.  Therefore, both the notice and the hearing constitute

constitutionally sufficient due process.

> 2.   *Plaintiff was not entitled to a copy of the Hearing Officer's report and*
>      *recommendation*

Plaintiff claims that he should have been given him a copy of the Hearing Officer's report

and recommendation.  See Compl.  ¶ 42.  Plaintiff alleges that he did not receive "a copy of the

Hearing Officer's decision" and that deprived him "of his guarantee to due process entitlement to

notice and opportunity to be heard."[4]  Compl.  ¶ 42.   Plaintiff was not entitled to receive a copy

of the Hearing Officer's report and recommendation, which the Hearing Officer makes after a

hearing and provides to the Architect as part of the materials to be reviewed by the Architect in

making the final determination.  Pursuant to Chapter 752:

> The Hearing officer shall . . . provide a finding(s) and recommendation(s) to the Architect
> based on the information available to him through his review of the case file and the
> information presented at the formal Hearing, if one is requested by the employee.

Not only was Plaintiff not entitled to receive the Hearing Officer's report and

recommendation pursuant to Chapter 752, but receipt of the report and recommendation was not

necessary for constitutionally adequate due process.  See Logan, 455 U.S. at 434 (1982) (finding

administrative process to be constitutionally adequate where there is notice and hearing).

---

[4]  Plaintiff incorrectly refers to the Hearing Officer's report and recommendation as a
decision.

Because Plaintiff received notice regarding why his termination was proposed and had an opportunity to present his side of the story at a hearing Plaintiff received constitutionally sufficient due process.

### III.    Qualified Immunity and failure To State A Claim

Qualified immunity protects government officials from personal liability for the exercise of their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Butera v. District of Columbia, 235 F.3d 637, 645-46 (D.C. Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is well settled that government officials enjoy a qualified immunity from constitutional and statutory claims against them. See, Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Anderson v. Creighton, 483 U.S. 635, 640 (1987); Cleavinger v. Saxner, 474 U.S. 193, 206 (1985); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The Supreme Court stated a right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

Conversely, an official is not shielded from liability where he "could be expected to know that certain conduct would violate statutory or constitutional rights." See Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998); accord Siegert v. Gilley, 500 U.S. 226, 231-32 (1991) (A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all); see also Fernandors v. District of Columbia  382 F. Supp.2d 63, 70-71 (D.D.C. 2005); Wilson v. Layne, 526 U.S. 603, 609 (1999)(a court performing a qualified immunity inquiry must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right.).

8

The whole purpose of qualified immunity is to protect public officials "from the costs associated with the defense of damages actions" by rooting out meritless lawsuits at the earliest point possible in the litigation process. Crawford-El v. Britton, 523 U.S. 574, 590 (1998). As the Supreme Court explained in Davis v. Scherer, 468 U.S. 183, 197 (1984), "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." Moreover, "[e]ven defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." Id. at 190.

Thus, in developing the doctrine of qualified immunity, the Supreme Court has sought to strike a balance "between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quotation omitted). Recognizing that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery," Harlow, 457 U.S. at 817-18, the Court balanced those competing interests by establishing a higher threshold for holding public officials personally liable for constitutional violations. For a public official to be liable for damages, that official must have violated a constitutional right, and that right must have been "clearly established" -- "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." Anderson, 483 U.S. at 640. ("qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law'") (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

9

Numerous circuits have placed the burden on plaintiff to come forward with evidence sufficient to create genuine issue as to whether defendant's conduct was objectively reasonable in light of clearly established law.  See, e.g., Salas v. Carpenter, 980 F.2d 299 (5th Cir. 1992); Washington v. Newsom, 977 F.2d 991 (6th Cir. 1992); Stewart v. Baldwin County Bd. of Educ., 908 F.2d 1499 (11th Cir. 1990); Hannon v. Turnage, 892 F.2d 653 (7th Cir. 1990); Pleasant v. Lovell, 876 F.2d 787 (10th Cir. 1989).  And a court performing a qualified immunity inquiry "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right."  Wilson v. Layne, 526 U.S. at 609.  The Supreme Court has instructed that deciding whether a constitutional right was violated first, rather than asking whether the right was clearly established, "promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public."  Id.  The validity of the qualified immunity analysis "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson, 483 U.S. at 639.  At the first stage of the inquiry, "courts must not define the relevant constitutional right in overly general terms, lest they strip the qualified immunity defense of all meaning."  Butera, 235 F.3d at 646.

Plaintiff can point to no clearly established constitutional right which was violated here and therefore the defendants are entitled to qualified immunity.  See Siegert, 500 U.S. 226. Plaintiff claims that his rights to procedural due process had been violated because he did not receive the Hearing Officer's report and recommendation and therefore he had no adequate notice and opportunity to be heard.  See Compl. ¶ 45.  An employee's receipt of a final report is not necessary for constitutionally adequate procedural due process.  See Cleveland Bd. Of Educ., 470 U.S. at 546 ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of

the story.").  For an administrative process to be constitutionally adequate, it must include notice and "some form of hearing."  <u>See</u> <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 434 (1982). Plaintiff does not dispute that he received advanced notice of the charges against him.  <u>See</u> Compl. ¶ 37-38.  He also concedes that he received an administrative hearing.  Compl. ¶ 45. Thus, no constitutional right was violated and in any event, no clear constitutional right was violated.  Consequently, the defendants are entitled to qualified immunity.

<u>CONCLUSION</u>

WHEREFORE, the above civil action should be dismissed.


June 5, 2007                          Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney.


_____/s/_____
ANDREA McBARNETTE, D.C. Bar  # 483789
Assistant United States Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 514-7153

12

AoC PERSONNEL MANUAL
Discipline

## Chapter 752:  Discipline

## CONTENTS

Subchapter   1.     General Provisions

.1      Purpose
.2      Policy
.3      Administration
.4      Applicability
.5      Actions Covered
.6      Actions Excluded
.7      Progressive Application of Actions
.8      Implementation
.9      Appeal Procedures
.10     Administrative Decisions
.11     Non-work Status
.12     Penalties
.13     Records
.14     Consultation
.15     Settlement Agreements
.16     Actions Held in Abeyance

Appendix A.     Informal Actions (Oral and Written Warnings)

.1      Initiation of Action
.2      Content of Warnings
.3      Documentation of Oral Warnings

Appendix B.     Formal Actions

.1      Initiation of Action
.2      Content of Letters
.3      Documentation

Appendix C.     Hearings

.1      Hearing Officers
.2      Duties of Hearing Officers
.3      Hearing Administrator
.4      Hearing Procedures

Table 1.     Typical Penalties for Infractions

AoC PERSONNEL MANUAL
Discipline

752-2
07-15-94

## Subchapter 1. General Provisions

### .1    Purpose

The purpose of this Chapter is to establish the policy of the Office of the Architect of the Capitol on discipline in the work force, and to establish uniform, Office-wide procedures to be followed in taking disciplinary action designed to address the behavioral or performance problems of employees.

### .2    Policy

It is the policy of the Office of the Architect of the Capitol to:

.1    Establish and enforce policies, practices, and procedures to accomplish its mission and functions.

.2    Ensure compliance with established policies, practices, regulations, and procedures by every employee.

.3    Ensure that management officials and supervisors are scrupulously fair in utilizing disciplinary procedures to assure employee compliance with policies, practices, regulations, and procedures.

.4    Ensure that all employees are informed of the policies, practices, regulations, and procedures which govern their actions, employment, or specific situations.

.5    Ensure that disciplinary actions are taken only for such cause as will promote the efficiency of the Office under fair, orderly, and uniform procedures for effecting actions which are warranted on their merits.

.6    Assure employees that they will be afforded due process in all disciplinary actions proposed or effected against them.

### .3    Administration

The Director, Human Resources Management Division (HRMD) is responsible for administering and evaluating the application of the provisions of this Chapter, and recommending revisions thereto. The HRMD shall provide advice, guidance, and assistance to management officials and supervisors in proposing and taking disciplinary action against employees.

AoC PERSONNEL MANUAL
Discipline

752-3
07-15-94

.4    **Applicability**

The provisions of this Chapter apply to all permanent employees of the Architect of the Capitol who are not serving a probationary period, except those employees who are serving on time-limited temporary, or temporary WAE, appointments and those employees who occupy Exempt Personnel positions.

.5    **Actions Covered**

The disciplinary actions covered by this Chapter are, in ascending order of severity, oral and written warnings; official reprimand; suspension; reduction in grade or pay; and, removal.

.6    **Actions Excluded**

.1    Actions covered by different policies and practices.

.2    Actions separating an employee for reasons not known to the Office at the time of appointment which, if known, would have precluded employment, including providing false information during the employment process.

.3    Actions separating an employee for abandonment, that is, failing to report to work for 10 consecutive work-days without approved leave, provided reasonable efforts have been made to communicate with the employee.

.4    Actions taken against an employee under the direction or regulations of another Federal authority.

.5    Actions taken against an employee who is convicted and incarcerated.

.7    **Progressive Application of Actions**

Disciplinary actions are normally imposed in a progressively stringent pattern, the sequence in which they are effected normally following the order in which they are listed in 1.5 and shown in Table 1, "Typical Penalties for Infractions" (attached). An exception to the listed sequence may be recommended by the first-line supervisor if the problem(s) is serious and should not be handled through progressive actions.

Examples of serious problems include, but are not limited to, those which endanger or threaten Members of Congress or their staffs and other Office employees; involve the possession, sale, or receipt of a controlled substance; theft; and all cases involving weapons.

AoC PERSONNEL MANUAL
Discipline

752-4
07-15-94

**.8     Implementation**

The use of all previously established disciplinary action policies and practices is superseded. Actions in progress on the approval date of this revision shall be completed in accordance with the procedures under which they were initiated.

**.9     Appeal Procedures**

The appeal procedures contained herein are for the use of all employees of the Office to whom this Chapter is applicable.

**.10     Administrative Decisions**

> .1     The Director, HRMD shall be responsible for providing guidance and resolving problems or questions arising under the procedures and provisions of this Chapter, including the extension of employee-response time when justified.

> .2     An administrative decision establishes a precedent which must be applied consistently in all disciplinary actions processed after its issuance. An administrative decision ceases to establish a precedent after the revision of the edition of this Chapter under which it was issued, because all actions processed thereafter are under the provisions of the revised edition.

> .3     Administrative decisions issued between revisions of this Chapter must be considered during the next revision of the Chapter.

**.11     Non-work Status**

> .1     Employees charged by the Office for serious problems, such as those which endanger or threaten Members of Congress, their staffs, or other Office employees; involve the possession, sale, or receipt of a controlled substance; theft, and all cases involving weapons, must be immediately placed in a non-work status until their case is resolved.

> .2     Employees under police charges not related to those listed in paragraph 1.11.1 may return to work with the approval of the management official of their organization and the Director, HRMD.

**.12     Penalties**

There are no mandatory penalties for any problem(s), but Table 1 identifies typical penalties imposed for infractions. Termination of employment must be proposed in cases involving charges related to the serious problem(s) identified in paragraph 1.11.1.

AoC PERSONNEL MANUAL
Discipline

752-5
07-15-94

.13    Records

   .1    Case files shall contain the documentation of all problems which occur and the associated corrective action taken. Case files shall be reviewed annually by their custodians and, if no additional incidents or problem(s) have occurred, may be destroyed.

   .2    The first-line supervisor, or official who first documents the occurrence of a problem(s), shall establish a file on the employee. The file must be given to the first-line supervisor by the person establishing it, and the first-line supervisor will retain the file for one year or until an official action is proposed. If an official reprimand, suspension, reduction in grade or pay, or removal is proposed, the file will be placed in the custody of the servicing personnel specialist, who will retain it for three years. Thereafter, the file shall be destroyed unless additional disciplinary action(s) supports its retention.

   .3    The letters proposing, concurring, and effecting suspension(s), reduction in grade or pay, and removal actions are filed permanently in the employee's Official Personnel Folder (OPF) if the employee's appeal is not successful in contravening the proposed action. Official reprimands may be removed from the OPF after one year at the employee's written request. Failure to request the removal of an Official Reprimand will cause it to remain in the OPF.

   .4    Copies of disciplinary action letters are distributed as follows:

      .1    Signed original to the employee.

      .2    Receipt copy to HRMD for filing in the employee's OPF.

.14    Consultation

The opinion of the General Counsel shall be obtained prior to the issuance of suspension or removal letters in all disciplinary actions, except those actions based on absence without approved leave and abandonment.

.15    Settlement Agreements

The concurrence of the Director, HRMD, shall be obtained before settlement agreements with employees are signed. The settlement agreement shall be referred to the Architect, through the Administrative Assistant, if the Director, HRMD, does not concur with the provisions of the agreement.

AoC PERSONNEL MANUAL
Discipline

752-6
07-15-94

.16    Actions Held in Abeyance

Disciplinary actions may be held in abeyance by the Architect, with or without the recommendation of the Hearing Officer, pending the achievement of a particular milestone or the accomplishment of a specific goal.  Actions held in abeyance will be effected immediately, without additional appeal, if the terms for holding the action in abeyance are not fulfilled.

AoC PERSONNEL MANUAL                                                      752, A-1
Discipline                                                               07-15-94

## Appendix A. Warnings

**.1    Initiation of Action**

The employee's first-line supervisor, or the official in whose presence the problem(s) or incident(s) occurred, shall issue the oral or written warning as close to the time of the occurrence as possible.

**.2    Content of Warnings**

   **.1    The warning should:**

      **.1    Identify the specific problem(s) or incident(s).**

      **.2    State the exact action(s), if any, that should be taken to correct or avoid recurrences of the problem(s) or incident(s), including referral to the EAP.**

      **.3    Inform the employee, if applicable, that oral warnings are documented and may be used as evidence in a more stringent action if the problem(s) persist or recur.**

**.3    Documentation of Oral Warnings**

   **.1    First-line supervisors' documentation of oral warnings and the contents of written warnings shall include:**

      **.1    The name and organizational location of the employee being warned.**

      **.2    Identification of the problem(s) or incident(s).**

      **.3    The date(s) on which the problem(s) or incident(s) occurred.**

      **.4    The instructions, if any, the employee must follow to correct or avoid recurrences.**

      **.5    The name of any witness(es) to the problem(s) or incident(s) and to the issuance of the warning. [Note: The presence of a witness to an oral warning is recommended if the first-line supervisor believes a more stringent disciplinary action may be necessary in the future. First-line supervisors who decide to have a witness present when an oral warning is made should exercise discretion in their choice of a person to be a witness. The use of another supervisor as the witness is preferable to the use of a co-worker of the employee.]**

## Appendix B. Formal Actions

.1    **Initiation of Action**

.1    The employee's first-line supervisor normally proposes the disciplinary action
against an employee because previously issued warnings have failed to correct
the problem(s), or because of the seriousness of the problem(s). The first-line
supervisor must secure the approval of the second-line supervisor before
contacting the servicing personnel specialist. Management officials or super-
visory personnel other than the employee's first or second-line supervisors
must secure the Director, HRMD's approval before proceeding further.

.2    The first-line supervisor shall, after receiving approval to propose the disci-
plinary action, provide the personnel specialist who services the employee's
organization with evidence of the problem(s) or incident(s) and a draft of the
charge(s) to be specified in the proposal le··er. The charge(s) must be sup-
ported by warnings previously issued, continued violations on which previous
action(s) was taken, or specific evidence if the action is the first disciplinary
action proposed.

.3    The personnel specialist shall assist the first-line supervisor in the preparation
of the letter and secure the approval of the Director, HRMD, or his designee,
of the proposal letter before it is signed and delivered to the employee.

.4    The first-line supervisor must sign and deliver the proposal letter and obtain
the recipient's signature on the receipt for the letter. Personnel specialists
may be instructed to deliver proposal letters signed by other officials.

.5    The signature of a witness to the attempted delivery of the proposal letter is
required if the employee declines to sign the receipt or accept delivery of the
letter. Letters mailed to the employee's residence must be sent by return
receipt mail, or equivalent delivery, to ensure the Office receives documenta-
tion of delivery. Disciplinary actions may proceed, however, after five work-
days if receipt is not obtained.

.6    The employee's explanation and statements in response to the charge(s), to
the second-line supervisor, or official identified in the proposal letter, shall be
addressed in that official's letter. The personnel specialist and concurring
official must ensure that, to the extent possible, the concurrence letter clearly
explains the rationale for concurring with the proposal after consideration of
the employee's response, if any. The personnel specialist shall secure the
approval of the Director, HRMD, or his designee, of the concurrence letter
before it is signed and delivered to the employee.

AoC PERSONNEL MANUAL                                            752, B-2
Discipline                                                     07-15-94

.7    The employee may respond in writing to the concurrence letter to issue a
      formal disciplinary action within five work-days of its receipt. All formal
      d'sciplinary actions, except Official Reprimands, shall be automatically re-
      ferred to a Hearing Officer by the Hearing Administrator after the response
      period has expired, except as provided in B.1.9. The Hearing Officer will:
      review the case; conduct a formal Hearing if requested by the employee; and,
      provide the Architect with a finding(s) and recommendation(s) on which his
      decision on the appeal can be based.

.8    Official reprimands will be referred to a Hearing Officer at the written re-
      quest of the employee within five work-days of receipt of the concurrence
      letter. Official reprimands will be reviewed, without a formal Hearing, and
      sent to the Architect with finding(s) and recommendation(s) on which his final
      decision on the appeal can be based.

.9    No formal action shall be filed in the employee's OPF until: the Architect
      issues his decision on the employee's appeal; the time period for filing an
      appeal has elapsed; or, the employee has agreed in writing to accept the pro-
      posed penalty and waives in writing the right to a review or formal Hearing,
      whichever of these situations occurs first.

.2    Content of Letters

   .1    The proposal letter must:

      .1    State that the first-line supervisor intends to take a formal disciplinary
            action against the employee.

      .2    Specify the problem(s) for which the action is proposed and, except in
            removal actions, refer the employee to the EAP.

      .3    Inform the employee of the right to review the material which supports
            the reason for the proposed action.

      .4    Advise the employee of the right to respond in writing to the reason(s)
            for which the action is proposed, within five work-days of receipt of the
            proposal letter, to the second-line supervisor or to a concurring official
            identified by the Director, HRMD, if the Office official signing the
            letter is not in the supervisory structure of the employee's organization.

      .5    Assure the employee that a concurrence letter which considers only the
            reasons specified in the proposal letter and the employee's response
            thereto shall be issued.

AoC PERSONNEL MANUAL
Discipline

752, B-3
07-15-94

.6    State that a copy of all letters and Notifications of Official Personnel Actions (SF 50) shall be placed in the employee's OPF as permanent records if the appeal to the Architect is not successful, and may serve as evidence in a subsequent, more stringent action.

.2    The concurrence letter must, as appropriate:

.1    State that the reviewing official concurs with, modifies, or withdraws the proposed disciplinary action.

.2    Specify the problem(s) or incident(s) for which the action is issued.

.3    Inform the employee of the right to review the material which supports the reasons for the action.

.4    Advise the employee of the right to submit a written appeal, which may include a request for a formal Hearing, within five work-days of receipt of the concurrence letter.

.5    Assure the employee that the Architect's final decision on the appeal will consider only the reasons specified in the proposal letter; the information submitted in the appeal; and, the Hearing Officer's finding(s) and recommendation(s).

.6    Inform the employee that a copy of all letters and SF 50s, if applicable, shall be placed in the employee's OPF and may serve as aggravating evidence in a subsequent action, if the appeal is not successful and removal is not effected.

.3    The final decision letter must:

.1    State that the letter is the Architect's final decision on the case and specify the penalty, if any, which is being imposed.

.2    Assure the employee that the final decision was based on the reasons specified in the letters proposing and concurring with the action; the employee's response thereto; and, the Hearing Officer's finding(s) and recommendation(s).

.3    Inform the employee of the disposition of the case records.

.3    Documentation

Documents supporting proposal and concurrence letters must be included in the case file.

AoC PERSONNEL MANUAL                                          752, C-1
Discipline                                                   07-15-94

## Appendix C.  Hearings

.1    Hearing Officers

    .1    The responsibility for serving as a Hearing Officer shall be shared by all
management officials.  To the extent feasible, each management official must
take a turn as a Hearing Officer before the process is repeated.

    .2    Management officials shall not serve as Hearing Officers on cases involving
their own employees or when a conflict of interest or reason which, in the
opinion of the Director, HRMD, precludes their service on a disciplinary case.

    .3    The Director, HRMD, with the concurrence of the Administrative Assistant,
may secure the services of a qualified person who is not an employee of the
Office of the Architect of the Capitol to serve as a Hearing Officer.

.2    Duties of Hearing Officers

The Hearing Officer shall:

    .1    Approve the witness request(s) submitted by the Office Representative and
Employee Representative at least three work-days prior to the Hearing.

    .2    Make decisions on procedural questions during a Hearing.

    .3    Ask questions of the Office Representative, the Employee Representative (if
one has been designated), witnesses, and the employee during the Hearing.

    .4    Provide a finding(s) and recommendation(s) to the Architect based on the
information available to him through his review of the case file and the infor-
mation presented at the formal Hearing, if one is requested by the employee.

.3    Hearing Administrator

The Director, HRMD shall designate a member of the staff as the Hearing Administrator
for actions appealed to the Architect.  The Hearing Administrator shall:

    .1    Designate a management official as the Hearing Officer for actions appealed
to the Architect, and schedule and conduct a formal Hearing at the employ-
ee's request.

    .2    Suspend, or terminate, a Hearing when the circumstances of the case or the
Hearing so warrant.

AoC PERSONNEL MANUAL                                                       752, C-2
Discipline                                                                07-15-94

      .3     Transmit the Hearing Officer's finding(s) and recommendation(s) to the Architect for his decision.

.4    Hearing Procedures

    .1    The Hearing Administrator shall:

        .1    Convene the Hearing at the appointed time.

        .2    Introduce the participants; state the purpose of the Hearing; and, review the procedures which are used to conduct the Hearing.

    .2    The Office Representative shall present the Office's case, evidence, and the testimony of witnesses approved by the Hearing Officer to support the charge(s).

    .3    The employee, or the Employee Representative, shall have the opportunity to question any evidence submitted and witnesses appearing at the Office Representative's request.

    .4    The employee, or the Employee Representative, then presents the employee's appeal, including any evidence and the testimony of witnesses approved by the Hearing Officer as relevant to the charge(s).

    .5    The Office Representative shall be given the opportunity to question any evidenced submitted and any witnesses appearing at the employee, or Employee Representative's, request.

    .6    The Office Representative may make a closing statement regarding the Office's case against the employee and the proposed penalty.

    .7    The employee, or Employee Representative, may make a closing statement regarding the employee's response to the Office's charges and the penalty proposed.

    .8    The Hearing Administrator shall summarize the procedures to be followed after the Hearing is adjourned.

    .9    The Hearing Administrator shall adjourn the Hearing.

    .10    The Hearing Officer shall, within ten work-days of the completion of the Hearing unless an extension of time is granted by the Architect, then:

        .1    Determine the relevancy of the testimony and evidence presented.

AoC PERSONNEL MANUAL
Discipline

752, C-3
07-15-94

.2    Discuss in a written report to the Architect:

.1    The merits of the charges presented.

.2    Findings of fact which address the nature and extent of the offense allegedly committed by the appellant.

.3    Express an opinion on the appropriateness of the adverse ac-tion in relation to the charge.

.4    Make a recommendation on the proposed action.

.5    Communicate by separate memorandum to the Architect any information developed during the Hearing which concerns per-sonnel administration in the Office.

AoC PERSONNEL MANUAL
Discipline

752, T-1
07-15-94

## Table 1.  Typical Penalties For Infractions

| | INFRACTION | 1st Offense | 2nd Offense | 3rd Offense |
|---|---|---|---|---|
| 1. | Absence without authorized leave, or failure to follow instructions regarding the requesting of leave. | Reprimand | Suspension | Removal |
| 2. | Failure to obey the reasonable orders of a supervisor/management official. | Reprimand | Suspension | Removal |
| 3. | Possession of a controlled substance. | Removal | | |
| 4. | Possession of a weapon. | Removal | | |
| 5. | Endangering or threatening Members of Congress, their staffs, or employees of, or under the administrative jurisdiction of, the Office. | Removal | | |
| 6. | Failure to perform assigned duties in a satisfactory manner. | Reprimand | Suspension | Removal |
| 7. | Sleeping on job. | Reprimand | Suspension | Removal |
| 8. | Unauthorized use, removal of Government property, funds, services, supplies, or materials, including use or permitting the improper use of Government charge cards, Accounting Control Transaction (ACT) numbers or other obligating forms or devices, or the property or other employees. [In arriving at the penalty, consideration should be given to the value of the property involved and whether voluntary restitution was made]. | Reprimand to Removal | Removal | |
| 9. | Knowing and willful misstatement or omission of material facts, forms, unlawful concealment, removal, alteration, mutilation, or destruction of any official document, contract files, or records. | Reprimand to Removal | Removal | |
| 10. | Violation of the Standards of Conduct. | Reprimand | Suspension | Removal |
| 11. | Falsification or alteration of a document. | Reprimand to Removal | Removal | |
| 12. | Knowing and willful misappropriation of Government funds or other funds which come into employee's possession by reason of his or her official position. | Removal | | |
| 13. | Knowing and willful misstatement or one or more claims (travel vouchers, imprest fund vouchers, time and attendance records, etc.) [Penalty depends on the value of the property or amount of employee time involved, the nature of the position held by the offending employee, and other factors.] | Reprimand to Removal | Removal | |
| 14. | Knowing and willful use of public office for private gain. | Removal | | |
| 15. | Misconduct whether or not in violation of a criminal statue, which impairs job performance or trustworthiness of the employee or otherwise affects the ability of a part of AoC to perform its mission. | Reprimand to Removal | Removal | |
| 16. | Theft, actual or attempted; unauthorized possession of Government property or property of others. | Removal | | |
| 17. | Failure, through negligence, to account properly for Government funds. | Reprimand | Suspension | Removal |
| 18. | Willful use or authorizing use of Government-owned or leased passenger motor vehicles for unofficial purposes. | Reprimand | Suspension | Removal |

| INFRACTION | 1st Offense | 2nd Offense | 3rd Offense |
|---|---|---|---|
| 19.  Loss of, or damage to, Government property. | | | |
|     a.  Through carelessness or negligence, or when property involved is of small value. | Reprimand | Suspension | Removal |
|     b.  Through maliciousness or intent, or when property involved is of significant value. | Suspension | Removal | |
| 20.  Using Government property or AoC employees in a duty status for other than official purposes.  [Penalty depends on the value of the property or amount of employee time involved, the nature of the position held by the offending employee, and other factors.] | Reprimand | Suspension | Removal |
| 21.  Negligent control of ACT numbers, Government charge cards, and other obligating forms and devices. | Reprimand | Suspension | Removal |
| 22.  Refusal to provide information in connection with an authorized investigation, and to furnish a signed statement when required, except where such refusal is based upon grounds or self-incrimination in potential criminal prosecution, or privileged communications. | Reprimand | Suspension | Removal |
| 23.  Negligent or willful mismanagement of a contract, or failure to administer provisions thereof, whether or not it results in a loss to the Government. | Reprimand | Suspension | Removal |
| 24.  Negligent or willful failure to maintain contract files in complete for contracts in accordance with applicable regulations. | Reprimand | Suspension | Removal |
| 25.  Knowing and willful failure to secure adequate and required competition for contracts in accordance with applicable regulations. | Reprimand | Suspension | Removal |
| 26.  Awarding of more than one contract/purchase order with the intent of avoiding limitations on contacting authority or the requirements of applicable regulations. | Reprimand | Suspension | Removal |
| 27.  Negligent or willful:<br><br>    (1)  Acceptance of incomplete services, supplies, or materials; or,<br><br>    (2)  Misrepresentation of contract inspections and certification for work not performed or services, supplies, or materials not received. | Reprimand to Removal | Removal | |
| 28.  Negligently or willfully preparing or issuing a contract for quantities which exceed reasonable requirements. | Suspension | Removal | |
| 29.  Negligently preparing an inaccurate Government estimate resulting in the acceptance of a given bid/price proposal from a contractor which thereby causes loss to the Government. | Suspension | Removal | |
| 30.  Soliciting or making a contribution for a gift (as defined by AoC Standards of Conduct) to an official superior, or acceptance of such a gift by an official superior. | Reprimand | Suspension | Removal |
| 31.  Unethical or improper use of official authority or credentials, or unauthorized disclosure or use of official information. | Reprimand | Suspension | Removal |
| 32.  Improper solicitation or acceptance of gifts, loans gratuities favors, etc., from persons, firms, or corporation with whom employees have official relations. | Reprimand | Suspension | Removal |
| 33.  Deliberate misrepresentation, concealment or withholding or a material fact or refusal to testify or cooperate in an official proceeding. | Reprimand to Removal | Removal | |